DECISION
{¶ 1} Relator, Dennis Scouler, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator temporary total disability ("TTD") *Page 2 
compensation beginning January 27, 2005 on grounds that relator had failed to present sufficient medical evidence of disability and based upon a finding that relator had voluntarily abandoned his employment with his employer, Big Lots Stores, Inc.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that the commission did not abuse its discretion in determining that relator failed to provide sufficient medical evidence to support his request. However, the magistrate went on to conclude that the commission did abuse its discretion when it determined that relator had voluntarily abandoned his employment without examining the totality of the circumstances presented in this case. Therefore, even though the commission denied relator's request on alternate grounds, because the issue regarding voluntary abandonment could affect future requests for TTD compensation, the magistrate recommended that this court issue a limited writ of mandamus ordering the commission to readdress the voluntary abandonment issue after fully examining the totality of the circumstances.
 {¶ 3} Both the relator and respondent Big Lots filed objections to the magistrate's decision.[1] Respondent Big Lots objects (1) to the magistrate's conclusion that the commission abused its discretion by finding that relator Scouler voluntarily abandoned his employment; and (2) to the magistrate's finding that there were two issues raised in this mandamus action. Relator objects to the magistrate's conclusion that the commission did *Page 3 
not abuse its discretion by holding that there was insufficient medical evidence supporting relator's request for TTD compensation.
 {¶ 4} Respondent Big Lots' first objection is based on an alleged mistake of fact regarding relator's phone calls to his employer while he was incarcerated. According to respondent Big Lots, the notation on the call log indicating that relator was "in jail be out by Tuesday," referred to Tuesday, December 28, 2004, not Tuesday, January 4, 2005 as stated by the magistrate. The staff hearing officer's ("SHO") order states that relator called his employer on December 27, 2004, and reported that he would not be in for work the next day. This finding would contradict respondent Big Lots' argument that the call log notation means relator would be at work on December 28, 2004. Nonetheless, this objection demonstrates the necessity of a remand for a closer evaluation of this issue. As stated by the magistrate, post-injury firings must be carefully scrutinized. State ex rel. Smithv. Superior's Brand Meats, Inc. (1996), 76 Ohio St.3d 408, 411. In light of precedent and the factual circumstances present here, respondent Big Lots' first objection is overruled.
 {¶ 5} Respondent Big Lots next contends that the only issue here is whether or not relator is entitled to TTD, and therefore, the magistrate erred in stating that this matter presented two issues for review. Granted, the ultimate question is whether TTD will be awarded. However, the commission denied benefits on alternative grounds and its finding relating to voluntary abandonment is germane to future award requests. We find no error here and accordingly overrule respondent Big Lots' second objection.
 {¶ 6} As indicated above, relator contends the magistrate erred in concluding that the commission did not abuse its discretion by holding that there was insufficient medical *Page 4 
evidence supporting relator's request for TTD benefits. However, this objection essentially contains a reargument of that already submitted to and addressed by the magistrate. For the reasons set forth in the magistrate's decision, we do not find relator's position to be well-taken. Consequently, relator's objection is overruled.
 {¶ 7} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, respondent's and relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant a limited writ of mandamus ordering the commission to readdress the voluntary abandonment issue after fully examining the totality of the circumstances.
Objections overruled; limited writ of mandamus granted.
 PETREE and KLATT, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on October 13, 2006. IN MANDAMUS {¶ 8} Relator, Dennis Scouler, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator temporary total disability ("TTD") *Page 6 
compensation beginning January 27, 2005 on grounds that relator had failed to present sufficient medical evidence of disability and based upon a finding that relator had voluntarily abandoned his employment with his employer, Big Lots Stores, Inc.
Findings of Fact: {¶ 9} 1. Relator had been employed by Big Lots Stores, Inc. ("employer"), since June 1991. In July 2004, relator reported that he sustained a neck injury while operating certain machinery which required him to constantly look up and down while placing merchandise in the appropriate racks.
 {¶ 10} 2. Relator was initially treated by Paul R. Gutheil, D.O., who certified that relator was temporarily and totally disabled from resuming his former position of employment. Dr. Gutheil did indicate that relator would be capable of performing modified work in a light-duty capacity.
 {¶ 11} 3. Relator was seen by John W. Cunningham, M.D., who issued a report dated October 8, 2004. Dr. Cunningham agreed that relator's history was consistent with a cervical strain/sprain and indicated that relator would be employable provided he was not asked to use his arms at or above shoulder level and that he was not asked to lift, carry, push, pull or otherwise move objects greater than 20 pounds on a temporary basis while participating in physical therapy. With regards to whether or not relator had a more significant disc herniation at C6-7, Dr. Cunningham opined that the diagnosis of disc herniation could not be supported at this time without further studies being performed. Dr. Cunningham also opined that relator had not reached maximum medical improvement ("MMI"). *Page 7 
 {¶ 12} 4. Relator was referred to Bradford B. Mullin, M.D., a neurosurgeon. After reviewing an MRI taken February 24, 2005, Dr. Mullin opined that relator had a small midline disc protrusion at C3-4 as well as a broad based posterior bulge of the disc at C6-7. He recommended that relator should be seen to discuss the findings and the possibility of surgery.
 {¶ 13} 5. At first, the employer certified relator's claim for cervical strain/sprain. However, based upon a telephone call from relator's wife, the employer began to question the validity of relator's claim. Ultimately, the employer concluded that relator had not submitted a valid claim and accused him of fraud. Ultimately, the commission determined that relator had not engaged in fraud and, by order dated August 31, 2005, relator's claim was allowed for "Cervical Strain and Sprain." Furthermore, the employer was ordered to pay relator TTD compensation for a closed period from October 1 to October 20, 2004. The commission determined that the employer had provided relator with a modified job duty, within the restrictions set out by Dr. Gutheil, and that relator began working in that position as of October 21, 2004.
 {¶ 14} 6. Following a domestic dispute at his home, relator was arrested and taken to jail. Relator was incarcerated from December 26, 2004 until January 26, 2005.
 {¶ 15} 7. According to relator's affidavit and the phone records provided by the employer, relator telephoned his employer from jail to notify them of his situation. The employer concedes that relator did contact them on December 26, 28, and 30, 2004, to notify them of his situation. Furthermore, pursuant to the attendance/roll call documents provided by the employer, during the week of December 27, 2005, it is specifically noted that relator did call in and the following notation is made on the employer's *Page 8 
documentation: "Call Heather At Store #C[.] In Jail[.] Be Out By Tuesday." The date on Tuesday would have been January 4, 2005. According to the testimony of relator's wife, she also called the employer to notify them that relator was in jail.
 {¶ 16} 8. According to relator's affidavit, once relator realized that he would be in jail for approximately one month, he orally requested that he be granted a leave of absence from his employment. Relator followed-up with a written request, dated January 12, 2005, requesting that he be granted a leave of absence during the time of his incarceration and requesting that the employer keep his job available upon his release. Relator provided his address at the jail and requested he be notified of the employer's decision.
 {¶ 17} 9. As stated previously, after relator's incarceration, relator's wife telephoned the employer and alleged that relator had not really been injured at work and the employer began an investigation. Ultimately, as a result of its investigation, the employer concluded that relator had made a fraudulent claim of injury. However, as indicated earlier, the commission ultimately found that relator did have a valid claim.
 {¶ 18} 10. Relator was released from prison on January 26, 2005, and reported to his employer on January 27, 2005. According to his affidavit, relator spoke with Kim Bowling about his job. Relator indicated further that he received a letter from the employer on January 28, 2005, informing him that he had been terminated from his employment because he had violated the employer's no call/no show policy. Specifically, the employer's January 28, 2005 letter to relator informed him of the following:
 The purpose of this letter is to inform you that your employment with Big Lots Stores, Inc. voluntarily terminated on January 4, 2005. *Page 9 
 You were scheduled to work at Big Lots store number 6 on a modified duty assignment and failed to work your required schedule. There was no contact from you December 30th, 31st or January 03rd. Based on your three days of not showing for scheduled work and not calling we concluded you had abandoned your job and voluntarily quit.
 {¶ 19} 11. According to relator's affidavit, he sought treatment with Dr. Gutheil after his release from incarceration; however, because the employer was now denying the claim, relator asserted that he was unable to receive any medical treatment.
 {¶ 20} 12. After the commission ultimately determined that relator had not committed fraud and allowed his claim for cervical strain/sprain, relator saw Dr. Gutheil again. Pursuant to a C-84 dated October 4, 2005, Dr. Gutheil certified relator as being temporarily and totally disabled from January 20, 2005 through an estimated return-to-work date of November 18, 2005. Dr. Gutheil also noted that he was awaiting approval for an EMG and that, after diagnostic testing was complete, relator may be able to return to transitional work duties. In his answers to interrogatories dated October 7, 2005, Dr. Gutheil also noted that at the time he examined relator on February 4, 2005, it was still his opinion that relator remained disabled from his original position of employment as a forklift operator and that relator continued to be under the same physical restrictions as indicated by Dr. Gutheil on October 21, 2004.
 {¶ 21} 13. Relator filed a request for TTD compensation on October 17, 2005, seeking compensation from January 27, 2005 forward.
 {¶ 22} 14. In support of his motion, relator submitted the medical release from Dr. Gutheil dated December 6, 2004, the C-84 dated October 4, 2005, the interrogatories from Dr. Gutheil dated October 7, 2005, and treatment notes from his visits on November 4 and December 1, 2005. *Page 10 
 {¶ 23} 15. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on November 4, 2005, and resulted in an order denying the request.
 {¶ 24} 16. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on December 21, 2005. The SHO affirmed the prior DHO order and denied relator's request due to a lack of corresponding medical evidence and the fact that relator had voluntarily abandoned his employment. With regard to the lack of medical evidence, the SHO stated as follows:
 Temporary total disability compensation is firstly denied based on the insufficiency of the medical evidence. The C-84 submitted in support of this motion is from Dr. Guthiel [sic], dated 10/04/2005, and covering a temporary total disability request from 09/20/2005 to 11/18/2005, with an estimated returned to work date of 11/18/2005. Therefore, there is no C-84 to cover the period of time from 01/27/2005 to 09/19/2005. The injured worker submits that the medical release of Dr. Guthiel [sic] dated 12/06/2004 and indicating work ability with restrictions is sufficient for the reason that this medical release is indicative of an inability to return to the injured worker's] former position of employment.
 Dr. Guthiel [sic] next examined the injured worker on 09/20/2005. The injured worker submitted that there was no treatment in the interim, between the medical release of Dr. Guthiel [sic] and the 09/20/2005 office visit because the self-insured employer refused to authorize any treatment. The Staff Hearing Officer was persuaded by the employer's argument that there was no request for treatment over this time period. No C-9s were submitted during this time period. The evidence on file indicates that the injured worker had an office visit on 03/03/2005 with Dr. Mullin, which office visit referred to a non-allowed cervical disc condition as does the C-84 form. The injured worker had no other treatment with his physician of record, Dr. Guthiel [sic], over this time period, as previously stated, despite the fact that Dr. Guthiel [sic] was his physician of record since the inception of this claim. *Page 11 
 Two EMGs on file were both normal and therefore the injured worker has not met his burden of proof that he had any need for treatment over this time period, or that he indeed had any treatment over this period of temporary total disability compensation requested from 01/27/2005.
 A history of the claim reveals that the injured worker had returned to work on 10/21/2004 with this employer. This employer had made a light duty job available to the injured worker, and he was performing that light duty job when he was incarcerated on charges of domestic violence on 12/26/2005 [sic]. He was incarcerated from 12/26/2004 to 01/26/2005. The employer sent out a letter on 01/28/2005 terminating the injured worker's employment.
 {¶ 25} With regard to the finding that relator had voluntarily abandoned his employment, the SHO stated as follows:
 Temporary total disability is, alternatively, denied from 01/27/2005, based on a finding that the injured worker voluntarily abandoned his employment. As previously stated, the injured worker was incarcerated on 12/26/2004. The employer terminated the injured worker, based on the no-call no-show policy. The employer stated at hearing that the injured worker failed to call-in or show-up for work on 12/30/2004, 12/31/2004, or 01/01/2005 and that the employer at that time began internal preparations between their human resources staff and their legal staff to assure a proper termination. They sent a termination letter out to the injured worker on 01/28/2005.
 The Staff Hearing Officer affirms the finding of the District Hearing Officer that the injured worker failed to comply with the employer's attendance policy which he acknowledged by signing on 08/25/2003. That attendance policy states that worker's [sic] are responsible for calling off work at least one hour prior to the beginning of the shift. That policy states further that failure to report to work or to call-in for three consecutive days would be considered an abandonment. The injured worker was scheduled to work on 12/27/2004, and called from jail on 12/26/2004 at 1:01 p.m. indicating that he would be unable to work the next day. There is evidence that the employer also accepted collect calls from the injured worker on 12/28/2004 and 12/30/2004. These phone calls were in the nature of the injured worker *Page 12 
requesting a leave of absence until he is released from jail, and pleading that the employer leave his job open until he returns, according to the testimony of the employer's witness who accepted the phone calls collect from jail. The injured worker was unaware until his hearing on 01/12/2005 as to how long he would be incarcerated, and ultimately he was incarcerated during the first period of time through 01/26/2005.
 The Staff Hearing Officer finds that the injured worker voluntarily abandoned his employment, and thus is precluded from receiving temporary total compensation beginning 01/27/2005 and to continue, less periods of incarceration from 03/21/2005 to 04/28/2005. The Staff Hearing Officer finds that the employer properly terminated the injured worker's employment per violation of the no-call no-show attendance policy of the employer. The Staff Hearing Officer finds that the injured worker's termination was the result of the injured worker's conduct preventing him from returning to his light duty position with this employer. The Staff Hearing Officer was not persuaded by the injured worker's argument that it was the employer's conduct which prevented the injured worker from returning to work.
 The injured worker testified that he requested a leave of absence, but the testimony of Steve Schlonsky was that the subject of a formal leave of absence never came up during his conversation with the injured worker. Steve Schlonsky testified that he took the phone call from the injured worker because the injured worker's direct supervisor was on vacation. Steven Schlonsky testified that his conversations with the injured worker were to the effect that the injured worker was requesting information whether the injured worker still had a job. The injured worker also wrote a letter to the employer on the issue of keeping his job until he was released from incarceration.
 At hearing, the employer explained its leave of absence policy and Ms. McMurray stated that the leave of absence policy is not automatic, and is required to be in writing. The employer stated that the decision whether to grant or deny a leave of absence is at the discretion of the employer.
 The Staff Hearing Officer is persuaded that the injured worker voluntarily abandoned his former position of employment, and thus is precluded from temporary total *Page 13 
disability from 01/27/2005, pursuant to [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401]. The Staff Hearing Officer was not persuaded, after listening to testimony, that the injured worker called in on three consecutive days one hour prior to his shift. Moreover, given that the injured worker was incarcerated from 12/26/2004 to 01/26/2005, he was incapable of reporting to work over this time period. The Staff Hearing Officer finds that it was the injured worker's own behavior that prevented him from reporting to work, and thus finds that the employer validly terminated the injured worker's employment on 01/28/2005.
 {¶ 26} 17. Relator's appeal was refused by order of the commission mailed January 19, 2006, and his request for reconsideration was denied by order mailed February 24, 2006.
 {¶ 27} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record *Page 14 
contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel.Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 30} There are two issues raised in this mandamus action. First, whether the commission abused its discretion when it determined that relator had not met his burden of proving entitlement to TTD compensation based upon a lack of sufficient medical evidence. Second, whether the commission abused its discretion by finding that relator was not entitled to TTD compensation because he had voluntarily abandoned his employment. For the reasons that follow, the magistrate finds the commission did not abuse its discretion by finding that relator did not provide sufficient medical evidence but that the commission did abuse its discretion in determining that relator had voluntarily abandoned his employment without examining the totality of the circumstances presented in the present case, including the allegations of fraud, relator's incarceration and attempts to notify his employment, and his subsequent termination.
 {¶ 31} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant *Page 15 
is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 32} It is undisputed that a claimant bears the burden of demonstrating entitlement to TTD compensation. In the present case, relator was seeking compensation beginning January 27, 2005. Relator submitted the December 6, 2004 medical release from Dr. Gutheil indicating that he was capable of performing light-duty employment as well as office notes and a C-84 from Dr. Gutheil beginning October 2005. Relator also submitted interrogatories of Dr. Gutheil wherein he indicated that, in his medical opinion, relator had remained under the same light-duty work restrictions since December 2004.
 {¶ 33} The commission determined that relator had not provided sufficient medical evidence because relator was not seen and treated by Dr. Gutheil during 2005 until November 20, 2005. The SHO also noted that relator had not requested any treatment during this time period and that the March 3, 2005 report of Dr. Mullin refers to a nonallowed cervical disc condition which may require surgery. Furthermore, the SHO noted that the EMGs on file were both normal.
 {¶ 34} Relator argues that, because the employer was challenging his claim in its entirety based upon the employer's belief that relator was guilty of fraud, that he was unable to see and treat with Dr. Gutheil until after the commission determined that his claim was valid and allow it by order dated August 31, 2005. Given the factual situation in this case, this magistrate can see how it would have been difficult for relator to seek and obtain treatment while the employer was strongly contesting the allowance of the claim in its entirety. However, it is also noted that, according to the report of Dr. Mullin, relator's problems were potentially caused by disc protrusions at C3-4 and C6-7. Although relator *Page 16 
did attempt to have his claim additionally allowed for these conditions, the record also indicates that relator voluntarily withdrew that motion during the time that the employer was contesting the validity of his claim. As such, even though the reasons why relator was not able to treat further with Dr. Gutheil are explained by the fact that the employer was contesting his claim allowance, there still is some evidence in the record demonstrating that his disability was due to the nonallowed disc protrusion problems noted by Dr. Mullin. For this reason, the magistrate finds that the commission did not abuse its discretion in denying relator's request based upon insufficient medical evidence.
 {¶ 35} The commission also denied relator's request for TTD compensation on the basis that relator had voluntarily abandoned his employment.
 {¶ 36} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 37} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the Supreme Court of Ohio stated that, when a worker has been discharged for violating a rule, the commission may conclude that the discharge constituted a voluntary relinquishment of employment where: (1) the employer's rule or policy defined the prohibited conduct clearly in writing; (2) the rule or policy identified the violation as a dischargeable offense; and (3) the worker knew or should have known, both the rule and *Page 17 
the consequences of violating the rule or policy. Where a claimant has voluntarily relinquished his or her job, either by resigning or abandoning it under Louisiana-Pacific, the claimant is deemed to have accepted the consequences of being without wages for a period of time and is not eligible to receive TTD compensation. See State ex rel.McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559.
 {¶ 38} On several occasions, both the Supreme Court of Ohio and this court reiterated that post-injury firings must be carefully scrutinized. In State ex rel. Smith v. Superior's Brand Meats, Inc. (1996),76 Ohio St.3d 408, 411, the court recognized "the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." Further, the court has noted that the nature of the departure has remained the pivotal question. Id.; State ex rel. Rockwell Internatl. v.Indus. Comm. (1988), 40 Ohio St.3d 44.
 {¶ 39} In the present case, the record is clear that the employer was aware that relator was incarcerated. Furthermore, as noted in the findings of fact, the employer acknowledged that relator did telephone to let them know about his situation. Further, according to the employer's own attendance/roll call documents, the employer indicated that they were aware that relator would not be out of jail until at least Tuesday, January 4, 2005. In spite of the fact that the employer knew that relator could not show up for work until at least January 4, 2005, the employer terminated him effective January 4, 2005, due to his failure to contact the employer on December 30, 31, 2004, and January 3, 2005. While a review of the employer's policy does indicate that an employee is required to call in every day when they are not going to be present for work, the magistrate finds that, in *Page 18 
this case, where the employer knew that relator was incarcerated and would not be released until at least January 4, 2005, the fact that the employer terminated him for his failure to call into work for three days preceding January 4, 2005, should have been evaluated more closely by the commission given the Supreme Court of Ohio's imperative that the commission carefully examine the totality of the circumstances whenever post-injury firings occur.
 {¶ 40} Looking at this case from the employer's standpoint, the magistrate can appreciate the fact that the employer may have terminated relator because the employer believed that relator had filed a fraudulent claim. This is certainly one inference which could be drawn from the evidence presented, including the testimony of representatives for the employer and for relator. Further, while the magistrate does note that the employer could have fired relator because the employer believed he had submitted a fraudulent claim, that firing would not bar relator's potential entitlement for TTD compensation in the future if he were to submit proper evidence. Further, the fact that the employer terminated relator for days when he was absent when the employer knew before hand that relator could not possibly appear for work on those dates, also bears further scrutiny on the part of the commission. The employer did not issue its letter terminating relator until January 28, 2005. According to the testimony of Janet McMurray, an employee of the employer, the employer had already began taking steps to investigate the allegation that relator had fraudulently filed a claim of injury. Further, the employer had sent relator to be seen by Dr. Cunningham and he confirmed both the history of the injury, physical findings consistent with that injury, and the limitations as set out by Dr. Gutheil. Furthermore, the magistrate specifically notes that relator requested a leave of *Page 19 
absence in a letter dated January 12, 2005. Pursuant to the employer's handbook, relator's supervisor was required to inform him of the status of his leave request within three days of receipt of the request. There is no evidence in the record to indicate that the employer responded to relator's request for leave and the magistrate finds that this is another factor which needs to be considered.
 {¶ 41} Because this magistrate concludes that the commission failed to follow the Supreme Court of Ohio's imperative to closely scrutinize the totality of the circumstances whenever a post-injury firing occurs, this magistrate concludes that relator has demonstrated that the commission abused its discretion in finding that he had voluntarily abandoned his employment and that any TTD compensation was precluded.
 {¶ 42} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion relative to the finding that relator did not meet his burden of establishing entitlement to TTD compensation from a medical standpoint. However, the magistrate finds that relator has demonstrated that the commission abused its discretion by finding that he had voluntarily abandoned his employment with the employer without carefully examining the totality of the circumstances surrounding his date of injury, subsequent incarceration, the employer's knowledge of when relator may be released from incarceration, and the employer's belief that the relator had fraudulently submitted a claim and his subsequent termination from employment. Because the determination of this issue could affect any additional requests for TTD compensation, it needs to be addressed even though the commission denied TTD compensation on alternate grounds. As such, the magistrate finds that relator is *Page 20 
entitled to a writ of mandamus ordering the commission to readdress the voluntary abandonment issue after fully examining the totality of the circumstances.
[1] Respondent commission filed a memorandum contra to both parties' objections. *Page 1